## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## <u>MCALLEN</u> DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-70051 |
| STAR AMBULANCE SERVICE, LLC, | § | |
|     Debtor | § | CHAPTER 11 |

## DEBTOR STAR AMBULANCE SERVICE, LLC'S
## COMBINED CHAPTER 11 DISCLOSURE STATEMENT AND
## PLAN OF REORGANIZATION

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION HAS BEEN CONDITIONALLY APPROVED BY THE COURT AND IS SCHEDULED FOR A FINAL HEARING ON APPROVAL OF THE DISCLOSURE STATEMENT AND A HEARING ON CONFIRMATION OF THE PLAN OF REORGANIZATION ON _____, 2016, AT 9:00 A.M. IN THE UNITED STATES COURTHOUSE, 1701 WEST BUSINESS 83, 10TH FLOOR COURTROOM, MCALLEN, TEXAS 78501.

ANY CREDITOR, INTEREST HOLDER, THE U.S. TRUSTEE OR ANY PARTY-IN-INTEREST WHO WISHES TO OBJECT TO: (A) THE FINAL APPROVAL OF THE DISCLOSURE PROVIDED IN THE DS/PLAN, AS AMENDED OR MODIFIED; OR (B) CONFIRMATION OF THE PLAN AS PROVIDED IN THE DS/PLAN, AS AMENDED OR MODIFIED, MUST FILE SUCH OBJECTION WITH THE COURT AND SERVE A COPY UPON THE DEBTOR'S COUNSEL, AT THE ADDRESS LISTED BELOW, BY 5:00 P.M. ON _____, 2016.

<u>NOTICE:</u>    THIS COMBINED CHAPTER 11 DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION IS NOT A SOLICITATION OF YOUR VOTE FOR THE DEBTOR'S PLAN OF REORGANIZATION.  PRIOR TO ANY SUCH SOLICITATION, THE BANKRUPTCY COURT MUST APPROVE THIS DISCLOSURE STATEMENT AS HAVING ADEQUATE INFORMATION TO ENABLE THE CREDITORS TO MAKE AN INFORMED JUDGMENT ON THE PLAN. THIS COMBINED CHAPTER 11 DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION IS BEING SERVED UPON PARTIES-IN-INTEREST WHO HAVE REQUESTED NOTICE AND IS FOR INFORMATION PURPOSES ONLY.  THE BANKRUPTCY CLERK'S OFFICE WILL SEND NOTICE OF THE HEARING ON THE APPROVAL OF THIS DISCLOSURE STATEMENT TO ALL CREDITORS ON THE COURT'S MAILING MATRIX.

THE INFORMATION CONTAINED IN THIS COMBINED CHAPTER 11 DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN INDEPENDENTLY AUDITED.  THE INFORMATION CONTAINED HEREIN IS INTENDED SOLELY FOR THE USE OF CREDITORS OF THE DEBTOR, AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN A DETERMINATION BY THEM OF HOW TO VOTE ON THE PLAN.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**<u>MCALLEN</u> DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-70051 |
| STAR AMBULANCE SERVICE, LLC, | § | |
|     Debtor | § | CHAPTER 11 |

**PLAN OF REORGANIZATION AND**
**CHAPTER 11 DISCLOSURE STATEMENT**

Star Ambulance Service, LLC (the "Debtor" or "Star Ambulance") files this Plan of Reorganization (the "Plan") and Chapter 11 Disclosure Statement (the "Disclosure Statement"). The Debtor is seeking to repay its debts over time pursuant to the terms of its Plan. As required by the Bankruptcy Code (the "Code"), the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan contains the terms for how each class of claims will be treated under the Plan.

The Court has not yet confirmed the Plan. In other words, the terms of the Plan are not yet binding on anyone. If the Court later confirms the Plan, then the Plan will be binding on the Debtor and all creditors and interest holders in this case.

The Debtor represents that everything in this document is true to the best of its knowledge. However, the information contained herein has not been independently audited. <u>**READ THIS DOCUMENT CAREFULLY FOR INFORMATION ABOUT THE FOLLOWING:**</u>

•     The Debtor and significant events during the bankruptcy case.

•     How the Plan proposes to treat claims or equity interests of the type you hold (e.g., what you will receive on your claim or equity interest if the Plan is confirmed).

•     Who can vote or object to the Plan.

•     What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.

2

•       Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation.

•       The effect of confirmation of the Plan.

## I.      Disclaimer

 THE DEBTOR URGES ALL HOLDERS OF CLAIMS AND INTERESTS IN IMPAIRED CLASSES RECEIVING BALLOTS TO ACCEPT ITS DISCLOSURE STATEMENT.

THE DISCLOSURE STATEMENT IS DESIGNED TO PROVIDE ADEQUATE INFORMATION TO ENABLE HOLDERS OF CLAIMS AGAINST AN INTEREST IN THE DEBTOR TO MAKE AN INFORMED JUDGMENT ON WHETHER TO ACCEPT OR REJECT THE PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THE PLAN SUMMARY AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, WHICH IS INCLUDED IN THIS DOCUMENT, OTHER EXHIBITS ANNEXED HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THIS COURT BEFORE OR CONCURRENTLY WITH THE FILING OF THIS DISCLOSURE STATEMENT. FURTHERMORE, THE PROJECTED FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN THE SUBJECT OF AN AUDIT. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL CONTINUE TO BE MATERIALLY ACCURATE: OR (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

ALL HOLDERS OF IMPAIRED CLAIMS AND IMPAIRED INTERESTS SHOULD READ AND CONSIDER CAREFULLY THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT AS A WHOLE, INCLUDING THE SECTION ENTITLED "RISK FACTORS" PRIOR TO VOTING ON THE PLAN. IN MAKING A DECISION TO ACCEPT OR REJECT THE PLAN, EACH HOLDER OF A CLAIM OR INTEREST MUST RELY ON ITS OWN EXAMINATION OF THE DEBTOR AS DESCRIBED IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, INCLUDING THE MERITS AND RISKS INVOLVED. IN ADDITION, CONFIRMATION AND CONSUMMATION OF THE PLAN IS SUBJECT TO CONDITIONS PRECEDENT THAT COULD LEAD TO DELAYS IN CONSUMMATION OF THE PLAN. THERE CAN BE NO ASSURANCE THAT EACH OF THESE CONDITIONS WILL BE SATISFIED OR WAIVED OR THAT THE PLAN WILL BE CONSUMMATED. EVEN AFTER THE EFFECTIVE DATE, DISTRIBUTIONS UNDER THE PLAN MAY BE SUBJECT TO THE SUBSTANTIAL DELAYS FOR HOLDERS OF CLAIMS AND INTERESTS THAT ARE DISPUTED.

THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL AS CONTAINING ADEQUATE INFORMATION OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE HOLDERS OF THE CLAIMS AND INTERESTS TO MAKE AN INFORMED JUDGMENT WITH RESPECT TO VOTING TO ACCEPT OR REJECT THIS PLAN. HOWEVER, THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A RECOMMENDATION OR DETERMINATION BY THE BANKRUPTCY COURT WITH RESPECT TO THE MERITS OF THE PLAN.

NO PARTY IS AUTHORIZED BY THE DEBTOR TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION WITH RESPECT TO THE PLAN OR REORGANIZATION SECURITIES OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS OR INFORMATION CONCERNING THE DEBTOR, THE DEBTOR'S FUTURE BUSINESS OPERATIONS OR THE VALUE OF DEBTOR'S PROPERTIES HAVE BEEN AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH HEREIN. ANY INFORMATION OR REPRESENTATIONS GIVEN TO OBTAIN YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE DIFFERENT FROM OR INCONSISTENT WITH THE INFORMATION OR REPRESENTATIONS CONTAINED HEREIN AND IN THE PLAN SHOULD NOT BE RELIED UPON BY ANY HOLDERS OF CLAIMS AND INTEREST IN VOTING ON THE PLAN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NONBANKRUPTCY LAW. ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTEREST IN OR SECURITIES OF, THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT HAS BEEN PREPARED.

UNTIL THE EFFECTIVE DATE, WITH RESPECT TO THE CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED ACTIONS (WHETHER OR NOT PENDING), THIS DISCLOSURE STATEMENT AND THE INFORMATION CONTAINED HEREIN SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION BY ANY ENTITY, BUT RATHER AS STATEMENTS MADE IN SETTLEMENT NEGOTIATIONS GOVERNED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER RULE OR STATUTE OF SIMILAR IMPORT.

THE DISCLOSURE STATEMENT SHALL NEITHER BE ADMISSIBLE IN ANY PROCEEDING INVOLVING A DEBTOR OR ANY OTHER PARTY NOR BE CONSTRUED TO BE PROVIDING ANY LEGAL BUSINESS, FINANCIAL OR TAX ADVICE. EACH HOLDER OF A CLAIM OR INTEREST SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

**THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARY THEREOF IN THIS DISCLOSURE STATEMENT.**

## II. The Disclosure Statement and the Confirmation and Requirements for Voting Confirmation Of the Debtor's Plan of Reorganization

### A. The Purpose of the Disclosure Statement

The Bankruptcy Code (Title 11 U.S.C. §101 et seq.) requires that "adequate information" be furnished all Creditors or parties in interest, consisting of a full and adequate disclosure by the Debtor in Possession of its historical, current, and anticipated future financial and business affairs, so that Creditors and other parties in interest can make an informed decision concerning any vote they may cast either in favor or, in opposition to, any proposed Plan. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of such claims in this case, to make an informed judgment in exercising his/her or its right to either accept or reject the Plan. A copy of the Plan is being provided with this Disclosure Statement.

**THIS OBJECTION PROCESS IS A PRE-CONDITION TO YOUR RELIANCE ON THIS DISCLOSURE STATEMENT.**

THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED TO THE BANKRUPTCY COURT FOR APPROVAL AS CONTAINING "ADEQUATE INFORMATION" AS REQUIRED UNDER THE BANKRUPTCY CODE. SUCH APPROVAL IS REQUIRED BY STATUTE AND DOES NOT CONSTITUTE A JUDGEMENT BY THE COURT AS TO THE DESIRABILITY OF THE PLAN OR AS TO THE VALUE OR SUITABILITY OF ANY CONSIDERATION OFFERED THEREBY. THE FINAL APPROVAL OF THIS DISCLOSURE STATEMENT WILL BE GRANTED BY THE BANKRUPTCY COURT ONLY AFTER (i) YOU HAVE RECEIVED NOTICE OF ITS FILING AND HAVE BEEN GIVEN AN OPPORTUNITY TO BE HEARD, AND (ii) YOU DO NOT OBJECT ON THE BASIS OF ABSENCE OF "ADEQUATE INFORMATION" AND SUSTAIN YOUR OBJECTION AT THE DISCLOSURE STATEMENT HEARING.

IF YOU FAIL TO OBJECT AFTER NOTICE, YOU MAY BE FOREVER BARRED OR ESTOPPED FROM COMPLAINING OF THE CONTENTS OR LACK OF CONTENTS OF THIS DISCLOSURE STATEMENT.

YOU ARE SPECIFICALLY REFERRED TO THE TERMS AND CONDITIONS OF THE PLAN AS FILED AND YOU ARE CAUTIONED THAT THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON AS A SUBSTITUTE FOR A CAREFUL REVIEW AND ANALYSIS OF THE PLAN AND OF ALL SUPPLEMENTS AND AMENDMENTS WHICH MAY BE ALLOWED AND APPROVED. THE PLAN MAY BE AMENDED AND SUPPLEMENTED AFTER THIS DISCLOSURE STATEMENT IS

FURNISHED TO YOU, UNDER CERTAIN CRITERIA SET FORTH IN THE BANKRUPTCY CODE AND PLAN.

## B. Source of Information For the Disclosure Statement

The Debtor has supplied the information in this Disclosure Statement and has made the estimation of values contained in this Disclosure Statement based on information obtained from several sources. No independent estimate of value has been made. The financial information is believed to be materially accurate and properly presented for the intended use: However, the accounting information is not now the subject of and has never been the subject of, an audit by any certified public accountant or any governmental agency. Although the Debtor believes that the information contained in all financial records is reasonably and materially accurate, the Debtor does not warrant its accuracy.

## III. The Plan Confirmation Process

To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code. These include the requirements that: (i) the Plan must be proposed in good faith; (ii) at least one impaired class of claims must accept the plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

Under the Bankruptcy Code, the following steps must be taken to confirm a Chapter 11 Plan of Reorganization.

## A. Solicitation of Plan

If the Court approves Debtor's Disclosure Statement, as contained herein, Debtor will forward to its creditors and other parties-in-interest the Disclosure Statement and Plan together with the Court's Order Approving Disclosure Statement, Giving Notice of Confirmation Hearing, Setting Certain Deadlines and Providing for Other Matters Concerning Confirmation of the Plan (the "Order"). The Order will schedule the hearing on the confirmation of the Plan and provide dates by which creditors, or any party-in-interest, may file an objection to the confirmation of the Plan.

## B. The Confirmation Hearing and Objections to the Plan

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the plan, at which any party-in-interest may object to confirmation of the Plan.

 The date and time of the hearing on confirmation of the Plan will be set forth in a notice to each Creditor.   The hearing may be adjourned from time to time by the Bankruptcy Court without  further notice except for an announcement made at the hearing or any adjournment thereof.   Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served upon Debtor's counsel at the address listed below, together with the proof of service, on or before the date set by the Bankruptcy Court:
Marcos D. Oliva, PC
223 W. Nolana Ave.
McAllen, TX 78504
marcos@olivalawfirm.com
956-683-7800 office
866-868-4224 fax

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

UNLESS OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## C.  Requirements for Confirmation of the Plan

At the hearing on confirmation of the Plan, the Bankruptcy Court shall determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event, the Bankruptcy Court shall enter an order confirming the Plan.  To be confirmable, the Plan must meet the requirements listed in §§1129(a) or (b) of the Code.  These include the requirements that: (i) the Plan must be proposed in food faith; (ii) at least one impaired class of claims must accept the Plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible.   These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

The Debtor believes the Plan satisfied all of the statutory requirements of  Chapter 11 of Title 11, United States Code, that the Debtor has complied or will have complied with all of the requirements of the Chapter 11 and that the proposal of the Plan is made in good faith.

### D.  Voting Rights and Requirements

If the Court approves this Disclosure Statement, each Creditor entitled to vote on the Plan will be provided with a ballot to be used for voting to accept or reject the Plan, together with a postage paid return envelope.

In order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be completed and returned to the Bankruptcy Court prior to the hearing before the Bankruptcy Court requiring its approval of the Plan or at such other time as the Bankruptcy Court may set.  The time and date of the hearing will be set forth in a notice to the Creditors.

Whether or not the Creditor entitled to vote expects to be present at the hearing, each Creditor is urged to complete, date, sign and properly mail the ballot to the following address:

> U. S. BANKRUPTCY COURT
> 1133 N. Shoreline Blvd., 2nd Floor
> Corpus Christi, Texas 78403

With a copy to:

> Marcos D. Oliva, PC
> 223 W. Nolana Ave.
> McAllen, TX 78504
> marcos@olivalawfirm.com
> 956-683-7800 office
> 866-868-4224 fax

Any Creditor whose claim is impaired under the Plan is entitled to vote, if either (I) its Claim has been scheduled by the Debtor (and such claim is not scheduled as disputed, contingent or unliquidated), or (ii) it has filed a proof of claim on or before the 1st date set by the Bankruptcy Court for such filings.  Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allowed the claim in an amount which it deems proper for the purpose of accepting or rejected the Plan upon application by the Creditor.  Such application must be heard and determined by the Bankruptcy Court at such time as specified by the Bankruptcy Court.  A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Under Section 1124 of the Bankruptcy Code, a class of Claims or Equity Security interests is impaired under a Chapter 11 plan unless, with respect to each Claim or interest of such class, the Plan:

1.      Leaves unaltered the legal, equitable, contractual rights of the holder of such Claim or Equity Security interest; or

2.      Notwithstanding any contractual provision applicable law that entitles the holder of a Claim or Equity Security interest to receive accelerated payment of his Claim or Equity Security interests after the occurrence of a default:

      a.      Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default that consists of a breach of any provision relating to the insolvency or financial condition of the Debtor at any time before the closing of the case, the commencement of a case under the Bankruptcy Code, or the appointment of or taking possession by a trustee in a case under the Bankruptcy Code;

      b.      Reinstates the maturity of such Claim or Equity Security interest as it existed before the default;

      c.      Compensates the holder of such claim or Equity Security interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

      d.      Does not otherwise alter the legal, equitable, or contractual rights to which such Claim or Equity Security interest entitles the holder of such claim or Equity Security interest; or

      e.      Provides that, on the Plan Effective Date, the holder of such Claim or Equity Security interest, received, on account of such Claim or Equity Security interest, cash equal to:

      (i)      With respect to a Claim, the allowed amount of such Claim; or

      (ii)      With respect to an Equity Security interest, if applicable, the greater of:

        (A)      Any applicable fixed liquidation preference; or

        (B)      Any fixed price at which the Debtor, under the terms of the security, may redeem the security.

Under the Debtor's Plan, all Classes are impaired except Classes 1, 2, 6 and 11.

The Bankruptcy Code defines acceptance of a Plan by a class of Creditors or Equity Security interest holders as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of the Claims or Equity Security interests of that class which actually cast ballots for acceptance or rejection of the Plan; i.e., acceptance takes place only if sixty-six and two thirds percent (66-2/3%) in amount of Claims and Equity Security interests in each class and more than fifty percent (50%) of Claims or Equity Security interests voting in each class cast their ballots in favor of acceptance.

The Classification of any manner of satisfying all Claims under the Plan take into consideration the fact that the Debtor may be joining obligor with another Person or Persons with respect to the same obligation.  All Claims against the Debtor based upon any such guarantees or joint obligations shall be discharged in the manner provided in the Plan.

## E.  Confirmation Hearing
### (The Court May Approve This Plan and Limit Creditors' Legal Rights)

The Court will consider only written objections and ballots that are timely filed.  If no objections are filed (or if all objections are overruled by the Court) and if at least one class of creditors will be bound, even if a Creditor did not vote and even if a Creditor voted against the Plan.  This means that the Creditor will not be allowed to collect its claim against Debtor, except as provided in this Plan.

## F.  Cramdown and Absolute Priority Rule

In the event that any impaired class of claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan, "does not discriminate unfairly" and "is fair and equitable".  A Plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class received more than it is legally  entitled to receive for its claims or Equity Security interest.   "Fair and Equitable" has different meanings for secured claims and unsecured claims.

With respect to a secured claim, fair and equitable means either (1) the impaired secured creditor retains its liens to the extent of its allowed claims and received deferred cash payments at least equal to the allowed amount of its claims and received deferred cash payments at least equal to the value of such Secured Creditor's interest in the property securing its liens, or (2) property subject to the lien of the impaired secured creditor is sold free and clear of that lien, with that lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clause (1) and (3) hereof; or (3) the impaired secured creditor realizes the "indubitable" equivalent of its claim under the Plan.

In the event one or more classes of impaired claims rejects the Plan, the Bankruptcy Court will determine at the hearing for confirmation of the Plan whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of claims.  If the Bankruptcy Court determines that the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of claims, the Bankruptcy Court may confirm the Plan over the objections of any impaired class.

The balance of this section only applies if a class of unsecured claims does not accept the Plan.  In that instance, Debtor seeks confirmation of the Plan pursuant to 11 U.S.C. §1129(b).

## IV.  Summary of the Debtor's Operations and Bankruptcy Estate

### A. Background

The Debtor filed a voluntary petition on January 29, 2016, that commenced this chapter 11 bankruptcy case.  The filing of the petition constituted an order for bankruptcy relief under §301 of the Code.  Upon the filing of the case, an automatic stay was imposed pursuant to §362(a) of the Code.  The automatic stay prohibits most collection activities against the Debtor and its property.  There are certain exceptions set forth in §362(b) of the Code.

The meeting of creditors under §341(a) of the Code was held on April 5, 2016.  The meeting took place as scheduled and was concluded on that date.

### B.  Description of Debtor's Assets

The Debtor filed schedules of all of its assets and liabilities on January 29,  2016.  The primary assets of the bankruptcy estate, their estimated values and associated liens are:

| DESCRIPTION AND CATEGORY OF ASSETS | FAIR MARKET VALUE | AMOUNT SECURED LIEN(S) | VALUE FOR ESTATE | IRS SECURED LIEN |
|---|---|---|---|---|
| **Motor Vehicles/Ambulances** | | | | $751,152.24 |
| 2010 Ford 350 Ambulance[1] | $20,000.00 | $11,000.00 | $9,000.00 | |
| 2009 Freightliner Ambulance[2] | $20,000.00 | $11,000.00 | $9,000.00 | |
| 2012 Ford F250 Supervisor Vehicle[3] | $30,000.00 | $29,848.00 | $152.00 | |
| 2006 Ford Ambulance | $7,000.00 | $00.00 | $7,000.00 | |
| 2007 Chevy Ambulance | $1,300.00 | $00.00 | $1,300.00 | |
| 2010 Ford E350 Ambulance[4] | $20,000.00 | $16,100.00 | $3,900.00 | |
| 2010 Ford E350 Ambulance[5] | $20,000.00 | $4,158.00 | $15,842.00 | |
| 2010 Ford E350 Ambulance[6] | $20,000.00 | $3,119.00 | $16,881.00 | |
| **Totals for Motor Vehicles/Ambulance** | **$138,300.00** | **$75,225.00** | **$63,075.00** | |
| **Equipment, Furniture & Supplies** | **$10,000.00** | **$00.00** | **$10,000.00** | |
| **Accounts Receivable** | **$1,000,000.00[7]** | **$00.00[8]** | **$1,000,000.00** | |
| **Cash** | **$50,000.00[9]** | **$00.00[10]** | **$50,000.00** | |
| | | | | |
| **Total Personal Property** | **$1,198,300.00** | **$75,225.00** | **$1,123,075.00** | **$751,152.24[11]** |
| Total liens secured by Assets | | **$826,377.24** | | |
| **TOTAL VALUE OF ASSETS:** | | | **$371,922.76** | |
| **Total IRS  Unsecured Debt** | | **$616,440.99** | | |
| **Total Value after payment to IRS** | | | **-$244,518.23** | |

---

[1]  This vehicle is currently titled in the name of Star EMS with lien held by Elsa State Bank & Trust Co.  There is an oral lease agreement between Debtor and Star EMS that is assumed.

[2]  This vehicle is currently titled in the name of Star EMS with lien held by Elsa State Bank & Trust Co.  There is an oral lease agreement between Debtor and Star EMS that is assumed.

[3]  This vehicle is currently titled in the name of shareholder, Silvia Martinez, with lien held by Ford Motor Credit.

[4]  This vehicle is leased, with option to purchase for minimum amount at the end of the lease, with Hann Financial Services.

[5]  This vehicle is leased, with option to purchase for minimum amount at the end of the lease, with Hann Financial Services.

[6]  This vehicle is leased, with option to purchase for minimum amount at the end of the lease, with Hann Financial Services.

[7]  This amount excludes the estimated "uncollectible" charges to private pay/private insurers which Debtor will not be able to collect.

[8]  This asset is subject to the IRS secured claim of $751,152.24 - the application of this lien is calculated in the next section of this chart.

[9]  This amount is an estimate based upon the available funds, as reported in the monthly operating reports, and takes into account the pending expenses incurred, taxes owed, and fees to be paid.

[10]  This asset is subject to the IRS secured claim of $751,152.24 - the application of this lien is calculated in the next section of this chart.

[11]  This amount does not include the IRS unsecured nonpriority claim of $497,464.16 and IRS unsecured general claim of $118,976.83 for a total debt owed to the IRS of $1,367,593.23.

### C.  Pending Claims/Litigation Owned by Debtor

When the Debtor filed this bankruptcy case, all of its property became property of its bankruptcy estate.  The following bankruptcy cases are related to this bankruptcy case.

| Case Name | Cause Number Court/Jurisdiction | Date Filed Amount Claimed | Nature of Lawsuit |
|---|---|---|---|
| Rudy Martinez, Individually and d/b/a Star EMS<br> V.<br> Andey D. Gray, Individually and d/b/a Crown Billing, Inc. | C-5026-14-H<br>389th District in Hidalgo County, Texas | 05/18/2014<br>$2,700,000.00<br><br>Trial Set for 08/22/2016 | Action for recovery of losses incurred due to billing company's errors.<br><br>Debtor is represented by: The Law Office of Ramon Garcia, P.C. |
| Norma Bazan Mireles, Individually and as Heir at Law and Representative of Rosa Maria Bazan and Her Estate<br>V.<br>Star Ambulance Service, LLC d/b/a Star EMS, Rodolfo Martinez, Rodolfo E. Martinez, Jr., Silvia Martinez and Rodolfo Martinez, III | CL-15-2807-D<br><br>County Court at Law #4 For Hidalgo County, Texas | 08/24/2015<br><br>Wrongful Death Claim | This is a wrongful death case.<br><br>Debtor is represented by: Hector Bustos |

At the time of filing this Disclosure Statement and Plan, the Debtor does not have any claims that would result in a lawsuit: either under bankruptcy law or non-bankruptcy law.

### D.  Events Leading Up to Bankruptcy

 Star Ambulance Service, LLC was formed on July 22, 2010, for the purpose of providing ambulance services: both emergency and non-emergency.  Star Ambulance Service, LLC is owned as follows: (i) Silvia Martinez owns 50%; and, (ii) Rodolfo Martinez, III owns 50%.  Star Ambulance Service, LLC assumed and took over services previously performed by Rodolfo Martinez, Jr. and Rodolfo Martinez, III d/b/a Star EMS.

Debtor (and its predecessor in interest, Star EMS) fell behind in filing its IRS 941 forms and paying the employment taxes.  The debt owed to the IRS became unmanageable and Debtor was forced to file this bankruptcy action to prevent the IRS from levying on its Medicare/Medicaid reimbursements and other accounts.    Specifically, this bankruptcy case

was filed to protect Debtor's assets from the IRS so it could continue to operate its business to generate sufficient income to repay the debts back to the IRS.

The IRS claims originate with Star EMS - a now defunct business that was operated by Rodolfo Martinez, Jr. from 2007 to 2013.  While in operation, Star EMS filed two (2) separate Chapter 11 bankruptcy cases.  During its operations, Star EMS fell delinquent in its payment of employment taxes to the IRS due to a negative review by Medicare from 2011 to 2013.  During that time, Medicare withheld approximately 90% of Star EMS's billings for Medicare patients - the majority of Star EMS's clients.  This caused significant cash flow shortages and Star EMS incurred additional debt to maintain operations.  Star EMS filed the two (2) bankruptcy actions due to its inability to service the IRS obligations and additional debt.

The first Chapter 11 case was filed on July 26, 2012 (Bankruptcy Case 12-70427) and dismissed on December 31, 2012, for failure to comply with the terms of the cash collateral order requiring periodic payment to the IRS and maintain post-petition bankruptcy tax obligations.

The second Chapter 11 case was filed on February 8, 2013 (Bankruptcy Case 13-70072) and voluntarily dismissed by Debtor Star EMS by order of the Court on July 1, 2013.

As described above, Star Ambulance Service, LLC was formed in 2012 and is owned by Silvia Martinez and Rodolfo Martinez, III (mother and son, respectively).  The owners created this entity to transfer Star EMS's assets and operations in order to protect their personal liability. Star Ambulance Service, LLC did not suffer from the same Medicare issues as Star EMS. Although it  began operations under a six-month medical review, that review did not significantly affect its income.

Unfortunately, as indicated above, Star Ambulance Service, LLC fell behind in its payments to the IRS for its employment taxes.  This was caused by the combination of: (i) assuming the tax liability of its predecessor in interest (Star EMS); and (ii) adding additional employees to handle the increased operations.  When the IRS begin levying on its accounts and assets, Debtor had not alternative but to file this bankruptcy case.

### E.  Operations in Bankruptcy

Debtor has continued to operate as a debtor-in-possession.  Debtor has retained and intends to retain its shareholders: Silvia Martinez (50%) and Rodolfo Martinez, III (50%). These shareholders will be retained because of their collective experience, contacts, and

proven record of commitment of substantial time and resources to the business.  Debtor has complied with its duties as debtor-in-possession.

## F.  Significant Events and Orders Entered During the Bankruptcy Case

The following significant events occurred and orders were entered during the bankruptcy case:

- On February 1, 2016, the Court entered the Chapter 11 Status Conference [Doc. 2] scheduling the status conference for February 22, 2016.
- On February 5, 2016, Debtor filed its First Amended Petition [Doc. 5].
- On March 7, 2016, the Court entered its Order Approving Marcos D. Oliva, P.C., as Attorney for Debtor-in-Possession [Doc. 15].
- On March 21, 2016, the Court entered the Parties' Agreed Order Authorizing Debtor to Incur Post-Petition Debt [Doc. 33] permitting Debtor's loan from Capital Stack of $40,000.00 (to be paid back in five (5) months) for the purpose of investing the loan proceeds, with additional funds from its DIP account, into a certificate of deposit in compliance with the Texas Department of Health's licensing-renewal requirements.
- On March 28, 2016, the Court entered its Order Authorizing Assumption of Unexpired Real Property Lease with ECU Properties, LTD [Doc. 43].
- On March 30, 2016, the Court entered its Order Authorizing Debtor's Use of Cash Collateral to Pay Pre-Petition Debt Owed to Internal Revenue Service [Doc. 44].
- On March 30, 2016, the Court entered the parties' First Amended Agreed Interim Order Authorizing Use of Cash Collateral [Doc. 45].
- On April 11, 2016, the Court entered the Order Granting Motion to Waive Appointment of A Patient Care Ombudsman [Doc. 52].
- No adversary proceedings were filed

## G.  Preferential or Other Avoidable Transfers

Debtor does not believe there are preferential or avoidable transfers.

## H.  Sources of Income for Purposes of the Plan

The Debtor earns income from its ambulance services: both emergency services and non-emergency transportation services.   Debtor has service contracts with the City of Mercedes to provide all emergency (or 9-1-1 calls) services in that area.   That contract, along with other emergency and non-emergency services provided in the Rio Grande Valley, generates approximately $1.5 million annually in gross income.  Debtor has a service contract

with South Texas Health Services, for transportation to and between all of the facilities operated by that entity, which generates approximately $600,000 annually.

All of these projections are reflected in the 2016 Profit and Loss Projection that is attached as Exhibit "A" and incorporated herein for all purposes.

Debtor has diligently worked to cut unnecessary expenses to increase the cash flow of its operations. The Business Cash Flow Projections, taking into account the Plan treatment of the largest debts owed (to the IRS) is attached as Exhibit "B" and incorporated herein for all purposes.

The current monthly income is described as follows:

| Description of  Source of Income | Average Monthly Gross Income | Average Monthly Operating Expenses |
|---|---|---|
| Sales/Collection on Services Provided | $241,946.00 | |
| Average Monthly Operating Expenses | | $191,996.00 |
| | | |
| **Average Monthly Net Profit** | | $49,950.00 |
| **Total Monthly Plan Payment:** | | **$22,927.47** |
| **Overage After Plan Payment:** | | $27,022.53 |

A more detailed description of the amounts reflected in the chart above is identified as the 2016 Profit & Loss Projection and is attached as Exhibit "A" and incorporated herein for all purposes. A  A copy of annual projected Business Cash Flow Analysis is attached as Exhibit "B" and incorporated herein for all purposes.

## V.  Description of Reorganization

Debtor intends to pay 100% of the debt owed. This will be accomplished by negotiating a discounted amount owed to the IRS, in exchange for timely payment of current tax obligations and timely payment of the Plan Payments to the IRS.  This discounted amount will be paid over a 5-year term at 3% interest.  All of the Debtor's other creditors will be paid 100% over a 5-year term.

## VI.  Definitions of Terms Used in Disclosure Statement and Plan

For the purpose of the Disclosure Statement and Plan, the following definitions shall apply:

**Administrative Claim:** means any cost, claim or expense of administration in the Chapter 11 case which has been allowed and entitled to priority in accordance with the provisions of § 330, § 503(b) and § 507(a) of the Code, including, any actual and necessary expenses of preserving the Debtor's estate including, without limitation, all fees and expensed to the extent allowed by the Court under § 330, § 503(b) under Chapter 123 of Title 28, United States Code, to the extent incurred by the Debtor, during the case and after confirmation regarding Claims Allowance, avoidance actions, or the like (whether or not Allowed).

**Allowance Date:** means the date an order of the Court Allowing a Claim in the Case has become a Final Order and non appealable and no appeal therefore is pending.

**Allowed Claim:** shall be any Claim against the Debtor, provided:  (a) proof shall be in the form of a Proof of Claim which was timely and properly filed or, if no proof of Claim was filed, which has been listed by the Debtor on the Schedules as liquidated in amount and not disputed or contingent and (b) in either case, a Claim as to which no objection to the Allowance thereof has been interposed on or before the applicable period of limitation fixed by the Plan, the Code, the Rules of the Court, or order of the Court; or as to which any objection is determined in favor of a claimant, and whether or not Allowed by an order of the Court, to the extent incurred by the Debtor and not paid from sources other than Property of the Estate.  Unless otherwise specified herein or by order of the Court, "Allowed Claim" shall not include any informal claim, nor interest on any Plan.  Unless a claim is an Allowed Claim, such Claim shall not be entitled to participate in any distribution under the Plan, and failure of any Claimant to take the necessary action to secure Allowance shall bar the existence of any liability of the Debtor or parties Discharged to that Claimant, and Claimant rights, if any, shall be Discharged by the confirmation of this Plan as provided by the Plan, applicable law and Bankruptcy code.

**Allowed Secured Claim:** means an Allowed Claim arising on or before the petition date that is secured by a valid and perfected lien upon Property of the Estate; excluding property subject to avoidable transfers which shall be deemed not an Allowed Secured Claim or an Allowed Claim for which the Debtor asserts a set off under Section 553 of the Code; to the extent of the value (which is set forth in the Schedules or if objection is made timely to value, either agreed by the Debtor pursuant to the Plan, in  writing, or in the absence of an agreement, has been determined in accordance with Section 506(a) or §1111(b) of the Code at or prior to Confirmation Date) of the interest of the holder of such Allowed Claim in Property of the Estate.

That portion of any such Secured Claim exceeding the value of security held therefore shall be a Deficiency Claim unless expressly modified by the Plan.

**Avoidance Action:** shall mean a cause of action assertable by the Debtor or its successors pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

**Bankruptcy Code**:  means the Bankruptcy Code of 1978 as contained in Title 11, U.S.C. § 101 et seq. and the amendments thereto.  All references to any statute in this plan are references to the Bankruptcy Code as defined therein.

**Bar Date**:  means the deadline for filing proofs of claims against the Debtor or any other date established pursuant to an Order of the Court with respect to any other creditor; or, with respect to any allowed Administrative Claim or Claim arising with respect to rejection of an executory contract, such other date as this Plan, the Court of the Bankruptcy Code may establish pursuant to the Plan (or other Order) and after which any proof of Claim files will not be Allowed, and the later filing of which will have no effect on the distributions provided in this Plan or effect the discharge or re-judicata effect of any discharge or injunction provided in the Plan.  No informal filing or other document shall constitute a Proof of Claim except as provided in this Plan.

**Claim:** shall mean

1. any "right to payment" either directly from the Debtor or Debtor in Possession or indirectly as a result of the Debtor's liability to third parties arising out of contract (e.g. a joint guaranty), tort (e.g. subordination), legal tort (e.g. equitable claim) or arising in any respect as a tax, tax penalty or interest or charge or imposition by a Governmental Unit resulting from a pecuniary or non-pecuniary loss by any Governmental Unit, that arose on or before the confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, contested, uncontested, legal equitable, secured, or Unsecured.

2. or any right under § 502(h)

3. or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, contested, uncontested, secured, or Unsecured;

4. or any right to a remedy in equity of at law arising out of violation of any rule or regulation of a Governmental Unit and any and all priority claims of every nature; and

5. or any right to look to the community property made property of the estate by 11 U.S.C. § 541 and the marriage of the Debtor to his non-filing spouse.

**Class or Classes:** means the particular Class designated in this Plan pursuant to Bankruptcy Code Sections 1122 and 1129 and in which Creditors' Claims may be included as provided in this Plan.

**Chapter 11 Case:** means the Chapter 11 case now pending in the United States Bankruptcy Court for the Southern District of Texas, STAR AMBULANCE SERVICE, LLC., filed in the U.S. Bankruptcy Court, Southern District of Texas, McAllen Division, having been commenced pursuant to 11 U.S.C. § 101, et seq.

**Confirmation Order:** means the signing and entry of the Order Confirming Plan entered pursuant to U.S.C. § 1129, and is deemed to include in the Plan all provisions of such Order or any subsequent Amended Order confirming the Plan, any authorized Modifications and providing for the continued operations of the Debtor and approval of this Plan.

**Confirmation Date:** shall mean the date set by the Court pursuant to 11 U.S.C. §1128 for the hearing on Confirmation of the Plan.

**Contested:** when used with respect to a Claim, shall mean a Claim against the Debtor (i) that is listed in the Debtor's schedule of liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's schedule of liabilities as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount; (iii) that is not listed in the Debtor's schedule of debts, but as to which a proof of claim has been filed with the Bankruptcy court: or (iv) as to which an objection has been filed.

**Court:** shall mean The United States Bankruptcy Court for the Southern District of Texas, McAllen Division, acting in this case.

**Creditor or Claimant:** shall mean any entity that has a claim against the Debtor that arose at the time of or before the filing of the petition in this case as defined in § 101(4) of the Bankruptcy Code.

**Debt:** shall mean any liability on a Claim held by any Person, Claimant or Subordinate Unsecured Claimant.

**Debtor:** shall mean STAR AMBULANCE SERVICE, LLC.

**Deficiency Claim:** means Unsecured Claims remaining after deducting the full value of the collateral of the Secured Claimant.

**Discharge:** means the release, satisfaction and full and final settlement of a Claim on any Debt as specifically provided in this Plan with respect to the Discharged party.

**Distributions Under the Plan:** means except as otherwise provided herein or as ordered by the Bankruptcy Court, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the first day of the month following one full month after the Effective Date, provided however, that should such Allowed Claims be paid in the ordinary course of business, the distribution date shall be such date the Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

**Effective Date:** shall mean the fifteenth (15th) day following the day of the entry of the Order confirming plan.

**Estate Assets or Property of the Estate:** shall mean the estate created by 11 U.S.C. § 541 on the commencement of the Chapter 11 Case consisting of all property owned by the Debtor upon the date of the filing of the Chapter 11 Case, including personal and real property, all accounts and accounts receivable, and the right to recover any Debt from any third party or Creditor, and the income or proceeds of Property of the Estate.

**Final Decree:**  means the last order of the Court entered in accordance with Bankruptcy Rule 3022 pursuant to 11 U.S.C. § 350.

**Final Order or Final Judgment:** shall mean an order of the Court which, not having been appealed, reversed, modified or amended and not having been stayed or the time to appeal from which or to seek review or rehearing of which having expired, has become conclusive of all matters adjudicated thereby and is in full force and effect.

**Governmental Unit:** shall mean "governmental unit" as defined in 11 U.S.C. § 101 and shall include any taxing unit and any administrative agency of any such Governmental Unit.

**Objection**: shall mean a contested matter, adversary proceeding, or any counterclaim or cross-action in any adversary proceeding initiated for the purpose of objecting to any Claim of a Creditor and shall include any action brought by a Creditor or removed to the Court after Confirmation of this Plan which deals with any Claims treated in, or arising under, or released or Discharged under this Plan or which may affect the administration of this Plan.

**Payment** **in** **Full** **and** **Paid** **in** **Full:** means the receipt by or for the account of a Creditor of consideration the value of which equals the amount of its Allowed Claim or the amount provided in this Plan for payment to such holder of the Allowed Claim.

**Person**: means an individual, corporation, limited liability company, partnership, joint venture, trust, estate, unincorporated organization, or a Governmental Unit or any agency or political subdivision thereof.

**Petition** **Date**: means January 29, 2016, the date the Voluntary Petition was filed by the Debtor.

**Plan:**  means this Plan of Reorganization is subject to confirmation by voluntary petition under Chapter 11 of the Bankruptcy Code and now pending in this Court.

**Proof** **of** **Claim**: shall mean the official form provided for the written filing proofs of a Debt or Claim providing for the inclusion of documentary evidence or written explanation which has been substantially completed and timely filed unless filing is not required by this Plan or the Bankruptcy Code (regarding undisputed and liquidated Claims scheduled as such) and which timely filed Proof of Claim has been signed under the penalty of perjury as provided in such official form.

**Priority** **Tax** **Claim**: means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in Sections 502(j) and 507 (a)(8) of the Bankruptcy Code.

**Pro** **Rata** **Share:** means the amount which is the result of multiplying the net proceeds or dividend available for distribution at any given time to a Class of Claimants by that fraction in which the numerator is the Allowed amount of the claim of the particular Creditor of the names Class and the denominator is the total of the Allowed amounts of all the Creditors' Allowed Claims of such Class.

**Property** **of** **The** **Estate:** shall mean the estate created by 11 U.S.C. § 541 on the commencement of the Chapter 11 case consisting of all property owned by the Debtor upon the date of filing of the chapter 11 case.

**Professional** **Fees:** means those Allowed Claims for reasonable and necessary professional fees which are Allowed pursuant to this Plan and/or the 11 U.S.C. § 330, 503(b)(D) and entitled to priority status as administrative expenses pursuant to 11 U.S.C. §507(a)(1).

**Rule(s) or Rules of the Court:** means the rules of procedure in bankruptcy cases applicable to cases pending before the Court, and if made applicable, as amended from time to time, including Rules in effect, if any, regarding Chapter 11 cases.

**Schedules or Schedule:** means the Schedules and Statement of Financial Affairs filed in this Bankruptcy case by the Debtor, including the list of assets, Creditors, Exempt Property, and including any amendments and/or supplements thereto up to and including the Confirmation Date.

**Settled Claim or Settlement with respect to a Claim:** means a claim that is no longer contested or, whether or not an Allowed Claim, is the subject of a compromise between the Debtor and the respective creditor regarding payment and additional payments from other than Property of the Estate.

**Secured Creditor:** means a creditor holding an Allowed Secured Claim, and may include any valid and enforceable Judgment Lien released herein.  Including but not limited to: statutory liens, other involuntary liens or mortgages, and voluntary liens.

**Subordinated Creditors:** means Creditors whose Claims are subordinated: (i) in accordance with 11 U.S.C. § 510 or §1129(b) by Final Order; or (ii) pursuant to this Plan.

**Substantial Consummation:**

(a) All or substantially all of the property proposed by the Plan to be transferred has been transferred;

(b) the Debtor or any successor to the Debtor under the plan has assumed operation of the Debtor's business or assumed possession of all or substantially all of the property dealt with by the plan; and (c) distributions under the Plan have commenced.

**Termination Date:** means the day on which all payments due under this Plan have been made, whether such payments are prior to or subsequent to a Declared Default under this Plan, or seventy two (72) months after the Effective Date, whichever first occurs.

**Unsecured Claim:** shall mean a Claim or the part of a claim which is not secured by a lien, security interest or other charge against or interest in Property of the Estate in which Debtor has an interest and shall include a Claim arising out of the rejection of any executory contract under 11 U.S.C. § 365 and deficiency claim, administrative claim or any claim asserted by an affiliate or insider to the Debtor, and excluding any interest, attorney's fees, costs of collection or the like not earned and due on the Petition Date and, with respect to distributions, only to the extent constituting and Allowed Unsecured Claim under this Plan.

22

A term used in this Disclosure Statement and Plan, not otherwise defined herein but used in the Code, shall have the definition assigned to such term in the Code.

## VII. Debtor's Plan for Payment of its Debts

### A.  Summary of Plan of Reorganization

Debtor intends to pay all allowed claims, as provided herein, within three hundred sixty (360) months.  However, Debtor hereby reserves the right to pay earlier without any penalty or fee.  The confirmation date shall be the date upon which the Order of Confirmation is entered by the Court.   The Effective Date of the Plan shall be fifteen (15) days following the Confirmation Date.

### B.  Classification of Classes under the Plan

**Administrative Claims**

Administrative Claims are those arising under 11 U.S.C. § 507(a)(2). Unless otherwise agreed by the holders of these Claims, these Claims will be paid in cash, in full, on or before the Effective Date, or when such Claims become Allowed Claims. ALL ADMINISTRATIVE CLAIMS (other than the US Trustee) WILL BE REQUIRED TO FILE AN ADMINISTRATIVE CLAIM PRIOR TO THE ADMINISTRATIVE BAR DATE. Administrative Claims are comprised of the following categories of Claims:

<u>Class 1:</u>   U.S.Trustee Fees: All allowed claims as allowed pursuant to 11 U.S.C. § 503.

<u>Class  2:</u>   Attorney/Professional Fees: First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under Chapter 123 of Title 28.  All allowed Administrative Claims, as that term is defined herein and in 11 U.S.C. §507 (a)(1), including fees for services rendered and expenses incurred by Court-approved counsel for the Debtor or other Professionals employed by the Debtor, and any expenses provided for under 28 U.S.C. §1930.

These claims are:

1. Attorney fees and costs: Marcos D. Oliva, P.C. Professional employed by Debtor for services rendered and expenses incurred. These payments will be made pursuant to the Court's approval of the fee applications filed by Debtor's attorney.

2. Financial professional: Vireo Consulting Group, LLC. Professional cash employed by Debtor as a cash flow consultant and financial analyst. These payments will be made pursuant to the Court's approval of the fee applications filed by this professional.

3. Post-Petition Taxes – It is believed that all of the Debtor's post-petition tax obligations have been satisfied.  The ad valorem taxes are described and provided for below.

4. There are no other administrative claims.

All other holders of Administrative Claims, including Governmental Units (except the U.S. Trustee) not covered under any other section, shall be required to file a proof of claim for allowance and payment of an Administrative Claim no later than the Administrative Claims Bar Date.

Objections to timely filed applications of Professionals for compensation or reimbursement of expenses and/or other Administrative Expense Claim must be filed and served no later than the sooner of: (i) twenty-one (21) days after the application is filed; or (ii) twenty-one (21) days after the Administrative Claims Bar Date.

Administrative Claims shall be paid in full by the Debtor on the later of:  (i) the Effective Date; (ii) fifteen (15) days after the date when such Administrative Claim is Allowed by the Court; or (iii) as agreed by the Administrative Claimant and the Debtor.

The administrative claim for any ongoing post-petition vendors, the IRS for any employment or income tax due for 2016 will be paid in the ordinary course of business by the Reorganized Debtor from its continuing operations and not under the Plan.

Class 3:      The Allowed Secured Claims of each creditor, person or entity, whether or not the holder of a secured claim that is secured by a tax lien and/or security interest in the property of the Debtor which arises from a secured claim as allowed by 11 U.S.C. §506(a) of the Code which is an allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

 The secured ad valorem tax claims in this class total $22,332.08 and consist of:

a.      Edinburg CISD [Claim 2] in the amount of $10,320.48;

b.    Donna ISD [Claim 3 ] in the amount of $590.94;
c.    City of Mercedes [Claim 4] in the amount of $191.49;
d.    City of Donna [Claim 7] in the amount of $461.60; and
e.    Hidalgo County [Claim 8] in the amount of $10,767.57.

The secured ad valorem tax claims in this class are:

| Taxing Entity | Year of Taxes Owed | Amount Owed |
|---|---|---|
| Edinburg CISD | 2013 | $5,482.72 |
| Edinburg CISD | 2014 | $4,837.76 |
| Donna ISD | 2016 | $590.94 |
| City of Mercedes | 2014 | $191.49 |
| City of Donna | 2016 | $461.60 |
| Hidalgo County (S728099000000602) | 2013 | $3,689.00 |
| Hidalgo County (S728099000000602) | 2014 | $6,067.31 |
| Hidalgo County (M355099101003402) | 2014 | $579.48 |
| Hidalgo County (W276099000003200) | 2016 | $431.78 |
| Totals: | | $22,332.08 |

Class 4:   The secured claim of the Texas Workforce Commission in the amount of $27,275.56 [Claim 1], which consists of $23,415.56 in unpaid employment taxes and $3,860.00 accrued interest.  This amount does not include a credit for the post-petition funds held by the Texas Workforce Commission.  Credit for the held amounts will be applied to the secured claim at confirmation and the new pre-petition amounts owed will be treated as described below.

Class 5:     The unsecured claim of the Texas Workforce Commission in the amount of $4,931.50 which consists of $3,711.57 in unpaid employment taxes and $1,219.93 accrued interest for employment taxes owed for quarters ended December 31, 2013, March 31, 2014, and June 30, 2014.

Class 6:    The secured claim of Elsa State Bank for $22,000.00 [no proof of claim filed] secured by: (i) a 2009 Freightliner Ambulance; and (ii) 2010 Ford 350 Ambulance (collectively, the "Ambulance Collateral").

Elsa State Bank's debt is evidenced by the promissory note and security agreement executed by Debtor's predecessor-in-interest, Star EMS, dated May 15, 2013, in the original principal amount of $79,349.39, made payable to Elsa State Bank for a term of four (4) years (the "Note").  The Note is secured by a lien granted against the Ambulance Collateral.   The Note matures on May 15, 2017.

Class 7:    The secured claim of the Internal Revenue Service [Claim 5] in the amount of $751,152.24 which consists of unpaid taxes of $487,425.09, penalties of $196,810.04, and unpaid interest of $66,917.11.

Class 8:    The Unsecured Priority Tax Claim of the Internal Revenue Service [Claim 5] in the amount of $497,564.16 which consists of unpaid taxes of $466,462.30 and unpaid interest of $31,101.86.

Class 9:    The Unsecured Non-Priority Tax Claim of the Internal Revenue Service [Claim 5] in the amount of $118,976.83 which consists of unpaid interest.

Class 10:    The unsecured non-priority class consists $157,101.26 owed to four (4) different creditors in the amounts listed below:

| Name of Unsecured Creditor | Amount Owed | Basis for Debt | Pro-Rata % |
|---|---|---|---|
| Billing Partners [Claim 6] | $82,902.86 | Billing services | .5151 |
| QMACS, Inc. (no POC filed) | $51,100.00 | Billing services | .3175 |
| Strategic Funding (no POC filed) | $14,598.40 | Services rendered | .0907 |
| Mobile Relay (no POC filed) | $12,358.49 | Radio services provided | .0767 |
| | | | |
| Total Owed: | $160,959.75 | | 100% |

Class 11:    This Class consists of the equity interest held in the Debtor by Silvia Martinez (50%) and Rodolfo Martinez, III (50%).

26

## C.  Treatment of Claims

| Class | Name of Creditor Classification of Claim | Amount Claimed as Owed | Years Amortized | Payment (Amount and Frequency) | Interest Rate |
|---|---|---|---|---|---|
| 1 | Trustee Fee *Administrative Claim* | n/a | n/a | n/a | n/a |
| 2 | Attorney's fees and expenses of the Marcos D. Oliva, P.C. *Administrative Claim* | $25,000.00 | | Upon approval of the Court, these attorney's fees and costs will be paid within 30-days of confirmation of this Plan | 0% |
| | Fees and Expenses of *Administrative Claim* | | n/a | Upon approval of the Court, these professional fees and costs will be  paid within 30-days of confirmation of this Plan. | |
| 3 | Edinburg CISD, Donna ISD, City of Mercedes,  and City of Donna *Secured Tax Claim Impaired* | $22,332.08 | 5 years | $496.08 monthly for 60  months | 12% |
| 4 | Texas Workforce Commission *Secured Claim - Impaired* | $27,275.56 | 4 years | $628.14 monthly for 48 months | 5% |
| 5 | Texas Workforce Commission *Unsecured Non-Priority Tax Impaired* | $4,931.50 (Star EMS 2013 & 2014) | 4 years | $113.57  monthly for 48 months | 5% |
| 6 | Elsa State Bank & Trust Co. *Secured Claim - Unimpaired* | $22,000.00 | 1 year | $1,866.91 monthly for 12 months - until the maturity date of 05/15/2017 | 6% |
| 7 | Internal Revenue Service *Secured Claim - Impaired* | $487,425.09 | 5 years | $8,758.39 monthly for 60 months | 3% |
| 8 | Internal Revenue Service *Unsecured Priority Tax Claim Impaired* | $466,462.30 | 5 years | $8,381.72 monthly for 60 months | 3% |
| 9 | Internal Revenue Service *Unsecured Non-Priority Tax Impaired* | $00.00 $118,976.83 (waived by IRS) | | | |
| 10 | Unsecured Creditors *Unsecured Non-Priority Impaired* | $160,959.75 | 5 years | $2,682.66 monthly for 60 months to be distributed pro rata | 0% |
| 11 | Equity Interest Holders | | | Interest in Debtor will be maintained. | |
| **Total Monthly Plan Payment:** | | | | | **$22,927.47** |

Class 1:  Trustee's Fees.  These shall be paid on the effective date of the plan.

Class 2:  Administrative Claim: First, administrative expenses allowed under section §503(b) of this title, and any fees and charges assessed against the estate under Chapter 123 of Title 28. All allowed Administrative Claims, as that term is defined herein and in 11 U.S.C. §507 (a)(1), including fees for services rendered and expenses incurred by Court-appointed counsel for the Debtor or other Professionals employed by the Debtor, and any expenses provided for under 28 U.S.C. §1930.

These claims are:

a.      Attorney fees and costs: Marcos D. Oliva, P.C. Professional employed by Debtor for services rendered and expenses incurred. These payments will be made pursuant to the Court's approval of the fee applications filed by Debtor's attorney.

b.      Financial professional: Vireo Consulting Group, LLC. Professional cash employed by Debtor as a cash flow consultant and financial analyst. These payments will be made pursuant to the Court's approval of the fee applications filed by this professional.

Treatment:    All of the professional fees will be paid according to the orders entered by the Bankruptcy Court authorizing such payments. All amounts owed for the administrative costs incurred during the pendency of the bankruptcy case, and approved by the Court, will be paid within 30-days from date of entry of the order confirming the Plan.

Class 3:      The secured ad valorem tax claims in this class total $22,332.08 and consist of:
a.      Edinburg CISD [Claim 2] in the amount of $10,320.48;
b.      Donna ISD [Claim 3 ] in the amount of $590.94;
c.      City of Mercedes [Claim 4] in the amount of $191.49;
d.      City of Donna [Claim 7] in the amount of $461.60; and
e.      Hidalgo County [Claim 8] in the amount of $10,767.57.

Treatment:      Payment shall be made in sixty (60) equal monthly installments, commencing thirty (30) days from the Plan's Confirmation Date with a final payment to be sixty (60) months from the date of confirmation of the Plan. The Class 3 Claims shall bear interest at the statutory rate of 12% per annum from the date of filing of this case until said taxes are paid in full. The Taxing Entities shall retain all liens until all taxes are paid in full. Specifically, the secured tax claims of Edinburg CISD, Donna ISD, City of Mercedes, City of Donna, and Hidalgo County (collectively, the "Taxing Entities") of $22,332.08 the shall be paid over a five year period at 12% per annum interest with sixty (60) equal monthly payments of $496.08 each.

The 2017 ad valorem taxes are not included in the Plan and shall be paid in the ordinary course of business and said Taxing Entities shall not be required to file a request for allowance and payment of its claim. To the extent any such taxes due to the Taxing Entities for the 2017 tax year are not timely paid as required by state statute, the Taxing Entities shall be at liberty to pursue state court remedies to collect said taxes without further order of the Bankruptcy Court. The statutory liens now securing said claims shall be retained until said taxes are paid in full.

Default shall occur if one monthly installment due to Taxing Entities under the confirmed Plan is not paid by Debtor or if post-confirmation taxes (including 2017 taxes) are not paid timely pursuant to state law. In the event of default in the monthly payments required to be paid to Taxing Entities, the Taxing Entity shall send written notice of default to Debtor's attorney and Debtor. If the default is not cured within twenty (20) days after notice of the default is mailed, the Taxing Entities may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code. In the event of a second default, Taxing Entities may proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code. If the event the Debtor fails to timely pay post-petition taxes, Taxing Entities shall be free to proceed with the state law remedies for collection of all amounts due under state law pursuant to the Texas Property Tax Code without further notice or court order.

 Class 4:     The secured claim of the Texas Workforce Commission in the amount of $27,275.56 [Claim 1], which consists of $23,415.56 in unpaid employment taxes and $3,860.00 accrued interest.  This amount does not include a credit for the post-petition funds held by the Texas Workforce Commission.  Credit for the held amounts will be applied to the secured claim at confirmation and the new pre-petition amounts owed will be treated as described below:

Treatment:    Debtor shall pay these taxes by remitting payments of $811.20 monthly for 60 months with interest on the unpaid balance accruing at 5% per annum.

Class 5:     The unsecured claim of the Texas Workforce Commission in the amount of $4,931.50 which consists of $3,711.57 in unpaid employment taxes and $1,219.93 accrued interest for employment taxes owed for quarters ended December 31, 2013, March 31, 2014, and June 30, 2014.

Treatment:    Debtor shall pay these taxes by remitting payments of $216.35 monthly for twenty-four (24) months with interest on the unpaid balance accruing at 5% per annum.

A failure by the reorganized Debtor to make a payment to the Texas Workforce Commission pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from the Texas Workforce Commission, then the Texas Workforce Commission may:

> (a) enforce the entire amount of its claims;

> (b) exercise any and all rights and remedies the Texas Workforce Commission may have under applicable state law; and/or

> (c) seek such relief as may be appropriate in the Court.

> The reorganized debtor shall have the opportunity to cure two (2) times over the life of the plan.  In the event of the third default, the Texas Workforce Commission may proceed with the state law remedies for collection of all amounts due under state law.

<u>Class  6:</u>     The secured claim of Elsa State Bank for $22,000.00 [no proof of claim filed] secured by: (i) a 2009 Freightliner Ambulance; and (ii) 2010 Ford 350 Ambulance (collectively, the "Ambulance Collateral").  This creditor is unimpaired.

<u>Treatment:</u>     Debtor shall pay this secured debt by paying Elsa State Bank & Trust Co. the final twelve (12) monthly payments of $1,866.91 under the Note, with interest accruing on the unpaid principal at the contract rate of 6%, until the Note matures on May 31, 2017.   Elsa State Bank & Trust Co. shall maintain its security interest and lien on the Ambulance Collateral.

<u>Class 7:</u>     The secured claim of the Internal Revenue Service [Claim 5] in the amount of $751,152.24 which consists of unpaid taxes of $487,425.09, penalties of $196,810.04, and unpaid interest of $66,917.11.

<u>Treatment:</u>   Pursuant to the agreement between Debtor and the Internal Revenue Service, the Internal Revenue Service, the Secured Claim of $751,152.24 which includes tax, interest and penalty,   minus any cash collateral payments that might be applied to the secured claim, is reduced to $487,425.09 for tax only.   Debtor shall pay this $487,425.09 by remitting monthly payments of  $8,758.39 for 60 months (5 years) with interest on the unpaid balance accruing at 3% per annum.   These payments shall begin thirty (30) days from the confirmation date. Nevertheless, should the Debtor be unsuccessful in repaying the Internal Revenue Service this Secured Claim of $487,425.09 in full, pursuant to this Agreement, the penalties will be added back to the Internal Revenue Service's secured claim and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such

claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.

<u>Class 8:</u>      The Unsecured Priority Tax Claim of the Internal Revenue Service [Claim 5] in the amount of $497,564.16 which consists of unpaid taxes of $466,462.30 and unpaid interest of $31,101.86.

<u>Treatment:</u>      Pursuant to the agreement between Debtor and the Internal Revenue Service, the Internal Revenue Service, the Secured Claim of $497,564.16 which includes tax and interest,  minus any cash collateral payments that might be applied to the unsecured priority claim is reduced to $466,462.30 for tax only.   Debtor shall pay this $466,462.30 by remitting monthly payments of  $8,381.72 for 60 months (5 years) with interest on the unpaid balance accruing at 3% per annum.  These payments shall begin thirty (30) days from the confirmation date. Nevertheless, should the Debtor be unsuccessful in repaying the Internal Revenue Service this Unsecured Nonpriority Claim of $466,462.30 in full, pursuant to this Agreement, the penalties will be added back to the Internal Revenue Service's unsecured nonpriority claim and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.

<u>Class 9:</u>     The Unsecured Non-Priority Tax Claim of the Internal Revenue Service [Claim 5] in the amount of $118,976.83 which consists of unpaid interest.

<u>Treatment</u>:    The Unsecured Non-Priority Tax Claim totals $118,976.83.  The Internal Revenue Service will agree to waive the $118,976.83 which is comprised of all penalty as long as the Debtor is successful in full payment of the total amounts due for the Unsecured Priority Claim and the Secured Claim without defaulting.  Nevertheless, should the Debtor be unsuccessful in repaying the Internal Revenue Service the Unsecured Nonpriority Claim and the Secured Claim in full, pursuant to this Agreement, the unsecured nonpriority claim of $118,976.83 will be added back to the Internal Revenue Service's claim and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.

Payments will be mailed to:
Internal Revenue Service
ATTN:  Keri Templeton
300 East 8th Street, Stop 5026AUS
Austin, Texas 78701

Agreement with the Internal Revenue Service:   The federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case.  The liens continue to be enforceable against the Reorganized Debtor's property to the extent, priority, and validity such liens were entitled to as of the Petition Date and under federal law.

 Additionally:

(i)      The debt owed by the Debtor to the Internal Revenue Service is a nondischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the Debtor should default, the Internal Revenue Service is not subject to the provisions of the Bankruptcy Code so that the Internal Revenue Service can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case.  The liens continue to be enforceable against all of the Debtor's property under federal law.

(ii)      A failure by the Reorganized Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the fifteenth (15th) day of each month.  If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within fifteen (15) days of the date of the demand letter.  The Debtor can receive up to three (3) notices of default from the Internal Revenue Service; however, on the third (3rd) notice of default from the Internal Revenue Service, the third (3rd) notice of default cannot be cured, and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.  These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority, unsecured general and administrative priority.

(iii)      The Internal Revenue Service is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Reorganized Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the Internal Revenue Service).  The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after

the date of the demand letter (described above) for which the debtor failed to cure the default.

(iv)    The Debtor's or Reorganized Debtor's failure to remain current on its ongoing tax obligations shall be an event of default under the terms of the Plan.  The Debtor is required to stay current on all ongoing tax reporting/tax payments with the Internal Revenue Service.  If the debtor defaults to the Internal Revenue Service (in the timely filing of any future tax return and/or the payment of any ongoing tax liability) this is an event of default to the plan term agreement.  The Internal Revenue Service must send written demand to the  Debtor or Reorganized Debtor of the default and the Debtor must cure the default within fifteen (15) days of the date on the demand letter.  If the default is not cured within fifteen (15) days, the Internal Revenue Service may assert the balance on the proof of claim still remaining which will include tax, interest and penalty to be due and owing and the entire balance (after crediting all payments made) may go out for collection.

(v)    Internal Revenue Service remedies upon default:   Upon any final and non-curable default by the Reorganized Debtor, the Internal Revenue Service may accelerate its allowed pre- and post-petition claims (and any future administrative claims), and declare the outstanding amounts of such claims to be immediately due and owing.  The Internal Revenue Service may pursue any and all available state and federal rights and remedies as provided by law without further order of this Court.

(vi)    The Internal Revenue Service agrees to withhold collections against the responsible officers of the Debtor for pre-petition trust fund assessments during the duration of the plan (provided there is no default as to the Internal Revenue Service). The period of limitations on collections against the responsible officers remain suspended  under 26 U.S.C. 6503(h) for the tax periods being paid under the plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

<u>Class 9:</u>       The unsecured non-priority class consists $160,959.75 owed to four (4) different creditors in the amounts listed below:

| Name of Unsecured Creditor | Amount Owed | Basis for Debt | Pro-Rata % |
|---|---|---|---|
| Billing Partners [Claim 6] | $82,902.86 | Billing services | .5151 |
| QMACS, Inc. (no POC filed) | $51,100.00 | Billing services | .3175 |
| Strategic Funding (no POC filed) | $14,598.40 | Services rendered | .0907 |
| Mobile Relay [Claim 9] | $12,358.49 | Radio services provided | .0768 |
| | | | |
| Total Owed: | $160,959.75 | | 100% |

<u>Treatment:</u>      Debtor will pay these unsecured creditors 100% by remitting monthly payments of $2,618.35 for 60 months with the payment to be distributed pro-rata to the creditors listed above.

<u>Class 10:</u>     This Class consists of the equity interest holders in Debtor: Silvia Martinez (50%) and Rodolfo Martinez, III (50%).

<u>Treatment:</u>      The shareholders will retain their interests in the Debtor.

## D.  Feasibility of the Plan

This plan is feasible as set out below. Specifically, Debtor's projected average monthly net income, is $49,950.00.   This monthly income is sufficient to pay the Plan Payment of $22,927.47.

| Description of  Source of Income | Average Monthly Gross Income | Average Monthly Operating Expenses |
|---|---|---|
| Sales/Collection on Services Provided | $241,946.00 | |
| Average Monthly Operating Expenses | | $191,996.00 |
| | | |
| **Average Monthly Net Profit** | | $49,950.00 |
| **Total Monthly Plan Payment:** | | **$22,927.47** |
| **Overage After Plan Payment:** | | $27,022.53 |

A more detailed description of the amounts reflected in the chart above is identified as the 2016 Profit & Loss Projection and is attached as Exhibit "A" and incorporated herein for all purposes. A   A copy of annual projected Business Cash Flow Analysis is attached as Exhibit "B" and incorporated herein for all purposes.

## VIII.  Alternative to the Debtor's Plan – Liquidation Analysis

The only alternative is liquidation.  However, liquidation would not be in the best interest of the estate because there would not be any funds available for distribution after all of the secured creditors were paid that amounts owed and secured by their liens.  Specifically, Debtor would not be able to maximize the value of the estate under liquidation.

Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the Plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Debtor's assets.

As set forth above, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest.   This treatment satisfies the liquidation test under §1129(a)(7)(A).   Holders of priority claims are paid in full, with interest.   This also satisfies the requirements of §1129(a)(7).

The Debtor has estimated that its assets, after payment of liens, would generate the following amounts in a chapter 7 liquidation:

### LIQUIDATION ANALYSIS (UNAUDITED)

| DESCRIPTION AND CATEGORY OF ASSETS | FAIR MARKET VALUE | AMOUNT SECURED LIEN(S) | VALUE FOR ESTATE | LIQUIDATION VALUE (without payment of lien) |
|---|---|---|---|---|
| **Motor Vehicles/Ambulances** | | | | |
| 2010 Ford 350 Ambulance | $20,000.00 | $11,000.00 | $9,000.00 | $10,000.00[12] |
| 2009 Freightliner Ambulance | $20,000.00 | $11,000.00 | $9,000.00 | $10,000.00[13] |
| 2012 Ford F250 Supervisor Vehicle | $30,000.00 | $29,848.00 | $152.00 | $15,000.00[14] |
| 2006 Ford Ambulance | $7,000.00 | $00.00 | $7,000.00 | $3,500.00[15] |
| 2007 Chevy Ambulance | $1,300.00 | $00.00 | $1,300.00 | $650.00[16] |
| 2010 Ford E350 Ambulance | $20,000.00 | $16,100.00 | $3,900.00 | $10,000.00[17] |
| 2010 Ford E350 Ambulance | $20,000.00 | $4,158.00 | $15,842.00 | $10,000.00[18] |
| 2010 Ford E350 Ambulance | $20,000.00 | $3,119.00 | $16,881.00 | $10,000.00[19] |
| **Totals for Motor Vehicles/Ambulance** | **$138,300.00** | **$75,225.00** | **$63,075.00** | **$69,150.00** |
| **Equipment, Furniture & Supplies** | **$10,000.00** | **$00.00** | **$10,000.00** | **$4,500.00[20]** |
| **Accounts Receivable** | **$1,000,000.00[21]** | **$00.00[22]** | **$1,000,000.00** | **$600,000.00[23]** |
| **Cash** | **$50,000.00[24]** | **$00.00[25]** | **$50,000.00** | **$50,000.00** |
| | | | | |
| **Total Value of Assets** | **$1,198,300.00** | **$75,225.00** | **$1,123,075.00** | **$723,650.00** |
| **Secured Priority Claims** | | | | **$826,377.24** |
| **Net Liquidation Funds Available to Other Claimants (after payment to secured creditors)** | | | | **-$102,727.24** |

---

[12]   This amount is 50% of the estimated value based upon a 70% bid price less attorney fees, holding costs, repairs, marketing and other costs incurred in relation to the liquidation of this asset.

[13]   This amount is 50% of the estimated value based upon a 70% bid price less attorney fees, holding costs, repairs, marketing and other costs incurred in relation to the liquidation of this asset.

[14]   This amount is 50% of the estimated value based upon a 70% bid price less attorney fees, holding costs, repairs, marketing and other costs incurred in relation to the liquidation of this asset.

[15]   This amount is 50% of the estimated value based upon a 70% bid price less attorney fees, holding costs, repairs, marketing and other costs incurred in relation to the liquidation of this asset.

[16]   This amount is 50% of the estimated value based upon a 70% bid price less attorney fees, holding costs, repairs, marketing and other costs incurred in relation to the liquidation of this asset.

[17]   This amount is 50% of the estimated value based upon a 70% bid price less attorney fees, holding costs, repairs, marketing and other costs incurred in relation to the liquidation of this asset.

[18]   This amount is 50% of the estimated value based upon a 70% bid price less attorney fees, holding costs, repairs, marketing and other costs incurred in relation to the liquidation of this asset.

[19]   This amount is 50% of the estimated value based upon a 70% bid price less attorney fees, holding costs, repairs, marketing and other costs incurred in relation to the liquidation of this asset.

[20]   This amount is based upon a 45% liquidation rate of recovery on these items of personal property.

[21]   This amount excludes the estimated "uncollectible" charges to private pay/private insurers which Debtor will not be able to collect.

[22]   This asset is subject to the IRS secured claim of $751,152.24 - the application of this lien is calculated in the next section of this chart.

[23]   This amount is based upon a discount rate of 60% if these accounts were sold to a private collection agency or independent billing company.

[24]   This amount is an estimate based upon the available funds, as reported in the monthly operating reports, and takes into account the pending expenses incurred, taxes owed, and fees to be paid.

[25]   This asset is subject to the IRS secured claim of $751,152.24 - the application of this lien is calculated in the next section of this chart.

## IX.  Risks to Creditors under the Debtor's Plan

There is always a chance that a plan may not succeed, but Debtor feels confident that is can maintain its current level of operations and earn more than sufficient income to pay the Plan Payments.

## X.  Payment – Prepayment

Any claim may be prepaid at any time, without penalty.  Interest as provided in this Plan must be paid through the date of the prepayment.  Distribution under the Plan shall commence on the first of the month, following on full month after the Effective Date.  Effective Date shall mean fifteen (15) days following entry of the Confirmation Order.

## XI.  Tax Issues

The federal income tax effects on holders of claims will vary depending on how the holder has treated its claim for tax purposes.  For example, if the holder has a basis in its debt claim and is paid an amount less than its basis, the holder may be entitled to a federal income tax deduction for its loss.  This will depend on the holder's own tax characteristics and cannot be assured.  Conversely, if the holder has no basis in its debt claim, the holder may recognize income for federal income tax purposes based on payments under the Plan.

Because each holder's federal income tax situation may vary, you are urged to consult your own tax advisors to determine the federal income tax effect of the Plan on you.

The Debtor may also have a federal income tax effect from the Plan.  To the extent that indebtedness is discharged, the Debtor may have a basis adjustment on its assets.  Moreover, any sale of assets may produce taxable income.    No opinion regarding the income tax ramifications of this Plan is provided to any party-in-interest or Creditor.

## XII.  Executory Contracts and Leases

Except for the assumed contracts and leases listed in the following chart, all executor leases and contracts are rejected as of the Effective Date.  Proofs of claim for damages arising from the rejection of an executor lease or contract must be filed no later than 30 days after the Effective Date.  Claims filed after that date will not be paid.

| Contracting Party | Description of Contract | Amount Required to Cure any Default |
|---|---|---|
| ECU Properties, LTD. | Commercial Lease Agreement for lease of Debtor's Office Space located at Donna Medical Plaza, 702 E. Expressway 83, Donna, Texas 78537 for $3,200.00 monthly (term: 12/01/2015 - 12/01/2017) | None |
| Integrated Vehicle Leasing, Inc. | Commercial  Vehicle Lease Agreement for lease of 2010 Ford E350 Ambulance with purchase option upon completion with payment of $101.00 (monthly payments of $1,610.82 and payoff date of 02/10/2017) | None |
| Integrated Vehicle Leasing, Inc. | Commercial  Vehicle Lease Agreement for lease of 2010 Ford E350 Ambulance with purchase option upon completion with payment of $101.00 (monthly payments of $1,039.63 and payoff date of 08/01/2016) | None |
| Integrated Vehicle Leasing, Inc. | Commercial  Vehicle Lease Agreement for lease of 2010 Ford E350 Ambulance with purchase option upon completion with payment of $101.00 (monthly payments of $1,039.63 and payoff date of 07/15/2016) | None |

The amount shown under "Amount Required to Cure Any Default" will be paid not later than 30 days after the Effective Date of the Plan.

If you are the Contracting Party on an assumed contract and disagree with the cure amounts shown you must file an objection prior to the objection deadline.  If you do not file an objection prior to the objection deadline, the Court may confirm the Plan and you will be bound by the terms of the confirmed Plan as to the cure amount.

## XIII. Claims Objections

Claims objections must be filed not later than 30 days after entry of the order confirming the Plan.  This deadline may be extended by the Court, on motion by a party in interest.  Any such motion must be filed not later than 30 days after entry of the order confirming the Plan.

## XIVI.  Effect of Confirmation of Plan

### A.  Discharge, Vesting, and Effective Date

Confirmation of the Plan shall discharge and fully satisfy, pursuant to and so provided by 11 U.S.C. §1141(d) of the Bankruptcy Code, and as provided contractually pursuant to the terms

of the Plan, all Debts, liabilities, and obligations of the Debtor (including all penalties, fines or forfeitures, and damages) that arose before the Confirmation Date, except as otherwise specifically provided in the Plan or the Order Confirming Plan, whether or not such Claim is Allowed or paid pursuant to this Plan.  Upon Confirmation, the Plan shall Discharge all Debts (as defined in 11 U.S.C. §101) and all Claims against, and liabilities of, the Debtor which are Dischargeable by Debtor in a case under 11 U.S.C. §101. et seq. by statute or by law applicable to Title 11, U.S.C., and in a Chapter 11 Case, or by contract with a Creditor.  All Creditors and Persons will continue to be stayed and enjoined from proceeding against the Debtor and its assets pursuant to 11 U.S.C. §524.

**IT IS THE INTENTION OF THIS PLAN THAT ONCE CONFIRMATION OCCURS, THE DEBTOR WILL BE FULLY, FINALLY, AND COMPLETELY DISCHARGED FROM ALL LIABILITIES INCLUDING CLAIMS AND DEBTS AND SHALL BE REVESTED WITH ALL PROPERTY OF THE ESTATE AS HEREIN PROVIDED.**

Upon Confirmation, title to all exempt assets of the Debtor shall be retained by and re-vested in the Debtor, free and clear of all claims, liens, security and equitable interests, except as specifically set forth in this Plan.  The Order Confirming Plan shall be a judicial determination of and a contract for, the discharge of the liabilities of and Claims against the Debtor.

The Effective Date of this Plan is the fifteenth (15th) day after entry of the order confirming  the Plan, unless the confirmation order is stayed.  If the confirmation order is stayed, the Effective Date shall be the 15th day following the termination of the stay.  No party may act pursuant to this Plan prior to the Effective Date.

### B.  Obligations to the United States Trustee

The Debtor will be responsible for timely payments of the United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6).  Any fees due as of the date of confirmation will be paid on the Effective Date.  After confirmation, the Debtor will continue to file timely financial reports in the format required by the United States Trustee and continue to pay quarterly fees as accrued until the case is closed, converted to a case under chapter 7, or dismissed.

### XV.  Releases and Alteration of Rights of and With Respect to Third Parties

Release of Liens, Claims and Causes of Action:  All creditors of the Debtor receiving payment or distributions pursuant to the Plan in consideration for the promises and obligations of the Debtor under the Plan shall be deemed to have waived, released, and discharged all rights or claims which they had or might have had against the Debtor.

Allowed Secured Claims: The lien securing any Allowed Secured Claim shall be deemed to be released and discharged in its entirety when the Allowed secured Claim secured by such lien has been paid in full in accordance with the provisions of this Plan, and as may be limited by the provisions of this Plan.  Upon such payment in full, the holder of such Allowed Secured Claims shall execute and deliver such instruments as may be reasonably requested by the Debtor or the Re-vested Debtor, in order to reflect such release and discharge on the appropriate land or public filing records.

Release of Judgment Liens: the Order confirming the Plan shall constitute a release and discharge of all judgment liens against any property, creditor asset, or asset of the Debtor or the Bankruptcy Estate.  A certified copy of the confirmation Order, shall constitute a release of any such judgment lien, or, at its sole discretion, the Debtor may demand and obtain from any judgment lien holder, at the cost of expense of the Debtor, a release of such judgment lien in recordable form. If after a reasonable request is made, any creditor who refuses or fails to execute said release, all costs (attorney's fees, filing fees, etc.) to enforce this process shall be borne by the creditor who refused.

Guarantees; Indemnities; Notes; Bonds; Etc.: All Claims and causes of action based upon guarantees of collection, payment or performance, indemnity or performance bonds, promissory notes, or other similar undertakings made or given by the Debtor as to the obligations or performance of another or of any other person shall be discharged, released and no further force and effect, except as otherwise provided in this Plan.

Release Upon Payment and Discharge:  All consideration and payments provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, Debts and liabilities of any nature whatsoever against the Debtor or any of their assets or properties effective on the Effective Date.  Except as may be otherwise provided herein, at the Confirmation Date all Claims against the Debtor shall be satisfied, Discharged, and released in full; and all claimants, holders of Claims and all Creditors shall be precluded from asserting against the Debtor, its assets, properties, or interests held by it, any Claim or future Claim based upon any transaction arising on or prior to the Confirmation Date.

Releases: All creditors of the Debtor receiving payment or distributions pursuant to the Plan, in consideration for the premises and obligations of the Debtor under the Plan, shall be deemed to have waived, released, and Discharged all rights or Claims which they had or might have had against the Debtor, except those expressly set out herein, unless otherwise ordered by this Court in the Confirmation Order.

Exculpations: The fullest permissible under all applicable law, the Debtor and Reorganized Debtor and its current shareholders, officers, directors, members, managers, agents, representatives for same shall neither have nor incur any liability to any entity including, specifically any holder of a Claim or Interest for any act taken or admitted to be taken in connection with or related to the prosecution of this Chapter 11 Case, the formulation, preparation, dissemination, implementation, Confirmation or consummation of any Plan, any Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Chapter 11 Case, any settlement agreement, purchase offer (whether accepted or rejected), any Plan, any Disclosure Statement, or the Confirmation Order, including Solicitation or acceptance of any Plan.

Third-Parties: Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, each Holder of a Class who (i) has voted to accept this Plan or abstained from voting and (ii) has not opted out from the release provided herein shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor and Debtor's shareholders from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims asserted against Debtor's Representatives and its shareholders for conducting business on behalf of Debtor, whether such claims are known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity or claimant would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, Debtor's shareholders, the Debtor's pre-petition and post-petition purchase, sale, or rescission of the purchase or sale of any asset of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any released party, the negotiation, formulation or preparation of the Plan and Disclosure Statement or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date.

## XVI.  Default

Unless stated elsewhere provided in this Plan, if there is a default in payment to a creditor under this Plan, the default must be cured within 20 days of written notice sent to the Debtor by the affected creditor.  If the default is not cured within the 20-day period, the creditor may seek any rights available under the Bankruptcy Code or under applicable non-bankruptcy law.

## XVII.  Injunction

Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against the Debtor, the Estate, properties of the Estate or proceeds of said property are, with respect to any such claims, specifically permanently enjoined and restrained from commencing, conducting or continuing any action or proceeding against the Debtor upon such Claims, including, but not limited to: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation) any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons based upon such Claims; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decreed or order against the Debtor, the Estate properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate, properties of the Estate or proceeds of said property or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons;  (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate, properties of the Estate or proceeds of said property, or any direct or indirect transferee of any property of, or successor in interest to, the foregoing Persons; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

## XVIII.  Release Upon Payment and Discharge

  All consideration and payments provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims, Debts, and liabilities of any nature whatsoever against the Debtor or any of its assets or properties effective on the Effective Date. Except as may otherwise provided herein, at the Discharge Date all Claims against the Debtor shall be satisfied, Discharged, and released in full; and all claimants, holders of Claims and all Creditors shall be precluded from asserting against the Debtor, its assets, properties, or interests held by it, any Claim or future Claim based upon any transaction arising on or prior to the Confirmation Date.

## XIX.  Effect of Discharge Order

Upon entry of a Discharge Order, all creditors of the Debtor receiving payment or distributions pursuant to the Plan, in consideration for the promises and obligations of the Debtor under the Plan, shall be deemed to have waived, released, and Discharged all rights or Claims which they had or might have had against the Debtor, except those expressly set out herein, unless otherwise ordered by this Court in the Discharge Order.

## XX.  Exculpations

To the fullest extent permissible under all applicable law, the Debtor and its current shareholder, officers, directors, members, managers, agents, representatives, if any, for same shall neither have nor incur any liability to any entity including, specifically, any holder of a Claim or Interest for any act taken or admitted to be taken in connection with or related to the prosecution of this Chapter 11 Case, the formulation, preparation, dissemination, implementation, Confirmation or consummation of any Plan, any Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Chapter 11 Case, any settlement agreement, purchase offer (whether accepted or rejected), any Plan, any Disclosure Statement, or the Confirmation Order, including solicitation of acceptance of the Plan.  No portion of such exculpation shall apply to any officer, director, or employee of the Debtor or their representatives, that held any such position prior to date of the order for relief.

## XXI.  Subordinated Claims

Creditors whose Claims are subordinated: (i) in accordance with 11 U.S.C. §510 or 11 U.S.C. §1129(b) by Final Order; or (ii) pursuant to this Plan consists of claims or interest which have been excluded from participation in the distributions to be made to holders of Unsecured Claims because they are Insiders as that term is defined by the Bankruptcy Code.  The member of this Class is Alejandro Villarreal.  These claims will not receive dividends or distributions from the Debtor until the claims of all Creditors that are subject to this Plan who are of a higher priority are satisfied in full pursuant to the terms of the Plan, except to the extent property management or similar fees are specified by the Plan.

## XXII.  Jurisdiction of the Court

The Court will retain jurisdiction until this Plan is fully consummated including but not limited to the following purposes:

a.      The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to creditor's claims for the purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine the claim in whole or in part.

b.      Determination of parties' claims as secured or unsecured, including valuation hearings under 11 U.S.C. §506 of the Bankruptcy Code.

c.      Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including but not limited to, any right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code or the determination of tax liabilities under 11 U.S.C. §505.

d.      Determination of all questions and disputes regarding the release of Third-Party claims, lawsuits, and actions against the Debtor, Debtor's Shareholders, or the Estate, as described in Paragraph XIII, above.

e.      The correction of any defect, the curing of any omissions, or the reconciliation of any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purpose and intent of this Plan.

f.      The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

g.      To enforce and interpret the terms and conditions of this Plan.

h.      Entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights, and powers as the Court may deem proper.

## XXIII. DEBTOR'S REQUEST FOR APPROVAL

WHEREFORE, the Debtor submits this Disclosure Statement and Plan, in good faith, in accordance with the provisions of Title 11, U.S.C. §101, et seq. and §1125 for approval of the Court at the Disclosure Statement Hearing, and for consideration by Creditors and other Parties-in-interest with respect to voting on the proposed Plan, and as the sole source of

information furnished by the Debtor, or to be furnished by the Debtor, in solicitation of acceptance of the Debtor's Plan.

SIGNED on the 27th day of May 2016.

Respectfully submitted,

By: /s/ Marcos D. Oliva
Marcos D. Oliva, PC
Texas Bar No. 24056068
Fed. Bar No. 948435
223 W. Nolana Ave.
McAllen, TX 78504
marcos@olivalawfirm.com
956-683-7800 office
866-868-4224 fax
www.olivalawfirm.com
ATTORNEY FOR DEBTOR-IN-POSSESSION


STAR AMBULANCE SERVICE, LLC.

By:   /s/ Silvia Martinez_____
      Silvia Martinez, Member and Debtor Representative

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the following document, **Debtor's Combined Chapter 11 Disclosure Statement and Plan of Reorganization**, has been forwarded via ECF and/or regular first class mail, on this the 27th day of May, 2016 to the following:

/s/ Marcos D. Oliva

Marcos D. Oliva

U.S. TRUSTEE:
Stephen Statham
606 N. Carancahua, Ste. 11
Corpus Christi, Texas 78401
Email: stephen.statham@usdoj.gov

DEBTOR:
Star Ambulance Service, LLC
702 E. Exp 83 Ste A1
Donna, TX 78537
Email: smstarems@gmail.com

NOTICE OF APPEARANCES:
Donna ISD, Edinburg CISD,
 City of Mercedes
% John T. Banks
Perdue, Brandon, Fielder, et al.
3301 Northland Drive, Ste. 505
Austin, TX 78731
E-Mail: jbanks@pbfcm.com

Hidalgo County %
LINEBARGER GOGGAN BLAIR &
SAMPSON, LLP
PO Box 17428
AUSTIN, TX 78760-7428
Email: austin.bankruptcy@publicans.com

Mobile Relays %
Michael A. McGurk
KITTLEMAN THOMAS, PLLC
P. O. Box 1416
McAllen, Texas 78502-1416
Email: mmcgurk@ktglawfirm.com

CREDITORS:
Internal Revenue Service
David Louis Guerra, Attorney
Office of the US Attorney
1701 W Hwy 83, Ste. 600
McAllen, TX 78501
Email: David.Guerra@usdoj.gov

Billing Partners, LLC %
Beirne, Maynard & Parsons, LLP
112 East Pecan Street, Suite 2750
San Antonio, Texas 78205
Email: mwymer@bmpllp.com and
lkurth@bmpllp.com

Texas Workforce Commission %
Texas Attorney General's Office
John Stern, Assistant Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Email: John.Stern@TexasAttorneyGeneral.gov

46